IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

LOVIE ANN SCOTT                                                                                      PLAINTIFF

VS.                                          4:09CV00035 SWW/JTR

MICHAEL J. ASTRUE,
Commissioner, Social
Security Administration                                                                       DEFENDANT

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### INSTRUCTIONS

This recommended disposition has been submitted to United States District Judge Susan Webber Wright. The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection. The objections must be filed with the Clerk no later than eleven (11) days from the date of the findings and recommendations. A copy must be served on the opposing party. The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

### RECOMMENDED DISPOSITION

Plaintiff, Lovie Ann Smith, has appealed the final decision of the Commissioner of the Social Security Administration denying her claim for Supplemental Security Income ("SSI"). Both parties have submitted Appeal Briefs (docket entries #6 and #7), and the issues are now joined and ready for disposition.

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Long v. Chater,* 108 F.3d 185, 187 (8th Cir. 1997); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion,[1] "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing

---

[1] *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision." *Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995).

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005).

In her "Disability Report," Plaintiff alleged that she was limited in her ability to work by bilateral shoulder pain. (Tr. 82.) After conducting an administrative hearing at which Plaintiff and a vocational expert ("VE") testified, the Administrative Law Judge ("ALJ") concluded that Plaintiff had not been under a disability[2], within the meaning of the Social Security Act, at any time through August 13, 2008, the date of his decision. (Tr. 18-19.) On November 18, 2008, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision, making it the final decision of the Commissioner. (Tr. 1-3.) Plaintiff then filed her Complaint initiating this appeal. (Docket entry #1.)

Plaintiff was 44 years old at the time of the hearing, and had completed high school. (Tr. 35, 88, 195.) She had past work experience as a life skills trainer in a nursing home, a fast food worker, and a housekeeper. (Tr. 17, 53-54, 83-84, 90-96.)

The ALJ considered Plaintiff's impairments by way of the required five-step sequential evaluation process. The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i) (2008). If the claimant is, benefits are denied, regardless of medical condition, age, education or work experience. *Id.* at § 416.920(b).

Step 2 involves a determination of whether the claimant has an impairment or combination of impairments which is "severe" and meets the duration requirement. *Id.* at § 416.920(a)(4)(ii).

---

[2]"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). A "physical or mental impairment" is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3) & 1382c(a)(3)(D).

If not, benefits are denied. *Id.* A "severe" impairment significantly limits a claimant's ability to perform basic work activities. *Id.* at § 416.920(c).

Step 3 involves a determination of whether the severe impairment(s) meets or equals a listed impairment. *Id.*, § 416.920(a)(4)(iii). If so, and the duration requirement is met, benefits are awarded. *Id.*

If the claimant does not meet or equal a Listing, then a residual functional capacity assessment is made. *Id.*, § 416.920(a)(4). This residual functional capacity assessment is utilized at Steps 4 and 5. *Id.*

Step 4 involves a determination of whether the claimant has sufficient residual functional capacity to perform past relevant work. *Id.*, § 416.920(a)(4)(iv). If so, benefits are denied. *Id.*

Step 5 involves a determination of whether the claimant is able to make an adjustment to other work, given claimant's age, education and work experience. *Id.*, § 416.920(a)(4)(v). If so, benefits are denied; if not, benefits are awarded. *Id.*

In his August 13, 2008 decision, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since her alleged onset date (Tr. 15); (2) had "severe" impairments, multilevel degenerative disk disease and spondylosis of the spine from C3 to T1, producing pain in both shoulders and tingling in both arms and hands, especially in the left, non-dominant hand (*id.*); (3) did not have an impairment or combination of impairments that met or equaled a Listing (*id.*); (4) was not credible in her statements and testimony (Tr. 16); (5) retained the residual functional capacity ("RFC") for light work, except for overhead work (Tr. 15); and (6) was able to perform other jobs which existed in significant numbers in the national economy, *e.g.*, positions such as a small parts assembler.[3] (Tr. 18.) Thus, the ALJ concluded that Plaintiff was not disabled. *Id.*

---

[3]In reaching this decision, the ALJ did not explicitly find that Plaintiff was unable to perform her past relevant work. However, he did note that most of the work that she had done did not rise to the level of substantial gainful activity. (Tr. 17.) He incorrectly stated that the vocational expert ("VE") testified she was unable to perform any of her past relevant work. (Tr. 18.) When the ALJ asked the VE if Plaintiff could perform any of her past relevant work, he replied she could return to her past work as a fast food worker. (Tr. 54.) By moving on to Step 5 of the sequential evaluation process, the ALJ implicitly found that Plaintiff could not perform her past relevant work. (Tr. 18.)

Plaintiff contends the ALJ erred: (1) in misconstruing the opinion of her treating neurologist; (2) in making inconsistent findings regarding her pain; (3) in failing to consider her headaches; (4) in failing to consider her pain medications; (5) in disregarding the opinion of her treating neurologist; and (6) in finding her noncompliance with treatment to be a negative influence on her credibility. Because Plaintiff's arguments overlap, the Court will address arguments 1 and 5 (treating neurologist) together, arguments 2, 4 and 6 (credibility) together and argument 3 (headaches) separately.

First, Plaintiff contends that the ALJ both disregarded and misconstrued the opinion of her treating neurologist, Dr. Scott M. Schlesinger.[4] (Appeal Brief at 7-8.) According to Plaintiff, the ALJ disregarded Dr. Schlesinger's December 18, 2006 notation that Plaintiff: "continues to complain of pain in her neck running down her left arm into the ulnar digits with some tingling and paresthesias into the right upper extremity into the index and middle finger." (Tr. 172.) Any relevance this notation might otherwise have would seem to be undermined by Dr. Schlesinger's letter, *the next day*, stating that Plaintiff could "return to light duty work on December 19, 2006." (Tr. 171.)

Plaintiff points out that, during her last visit to Dr. Schlesinger on January 5, 2007, he told her he did not know if she could return to work. (Pl's App. Br. at 7.) Yet, on that date, Dr. Schlesinger wrote Plaintiff's general practitioner a letter which strongly suggests that Plaintiff could return to work:

> *Medical Decision Making & Plan:*
> *The EMG and nerve conduction tests showed nothing on the right.* On the left, there is evidence of left C6 radicular changes. *She does not really have pain in the left arm, but just a heaviness feeling and abnormal sensations, but no pain.*
>
> I really don't feel that this unfortunate lady has enough symptomatology to warrant surgical intervention. I would recommend conservative care only. She has had three epidural steroid injections. She might benefit from continuing the medication Lyrica.
>
> I think she has reached maximum medical improvement. *I will give her a disability rating for the cervical spine* in accordance with The American Medical Association publication *Guides to the Evaluation of Permanent Impairment*, 4th Edition, Table 75,

---

[4]Obviously, these arguments are inconsistent.

page 113 *of 6%*.  I really don't feel like there is anything further I can do for her neurosurgically and will release her from my care.

*As regards to her return to work, she may need a [functional capacity evaluation] to determine her limitations.*

(Tr. 166.) (Emphasis added.)

The Court does not believe that the last quoted sentence of this letter can fairly be read to mean that it is Dr. Schlesinger's opinion that Plaintiff is unable to work.  Earlier in this letter, Dr. Schlesinger noted that testing showed "nothing" on the right, and "no pain" on the left arm but "just a heaviness feeling and abnormal sensation."  *Id.*  Her symptomatology did not warrant surgical intervention, but only conservative care.  *Id.*  He gave her a disability rating of the cervical spine of 6%.  *Id.*  Finally, her examination was unchanged from 18 days earlier, when Dr. Schlesinger found she return to light work.  (Tr. 171.)

The ALJ's determination that Plaintiff was capable of working is further bolstered by the medical records of Clay Lamey, a chiropractor who treated Plaintiff concurrently with Dr. Schlesinger.[5]  (Tr. 144-51, 207, 226.)  On September 29, 2006, Mr. Lamey wrote a To Whom It May Concern letter on behalf of Plaintiff.  (Tr. 149.)  He noted that she had responded "fairly well" to conservative care.  *Id.*  He allowed her to return to light duty work October 2, 2006.  *Id.*  He thought that light work would be beneficial to her recovery and she might be able to return to her regular duties on October 16, 2006.  *Id.*  On October 16, he considered it prudent to continue her on light duty until October 29, 2006.  (Tr. 146.)  On November 3, 2006, he recounted that she had returned to regular job duties on October 30, 2006.  (Tr. 145.)  She was feeling "much improved" but was cautious about physical work.  *Id.*  On November 15, 2006, he released her.  (Tr. 144.)  He observed that she would continue to experience problems "off and on" if she were required to perform the

---

[5]A chiropractor is not among the "acceptable sources" of medical evidence upon which the ALJ may rely to establish a medically determinable impairment.  20 C.F.R. § 416.913(a) (2007); *Ingram v. Chater*, 107 F.3d 598, 603 n.4 (8th Cir. 1997); *Walker v. Shalala*, 993 F.2d 630, 632, n.2 (8th Cir. 1993); *Chronkite v. Sullivan*, 935 F.2d 133, 134 (8th Cir. 1991).  However, such sources may be used to show how an impairment affects a claimant's ability to work.  20 C.F.R. § 416.913(d); *Chronkite v. Sullivan*, 935 F.2d at 134.

physical duties for which she was responsible on her current job, and noted that they had discussed "numerous times" her finding easier employment. *Id.* On February 23, 2007, he offered his opinion that, with time, her symptoms would completely subside and that she was not disabled. (Tr. 207.)

On April 10, 2007, Dr. John C. Dobbs performed a general physical examination of Plaintiff and found that she had a slightly reduced flexion and rotation of the cervical spine and flexion of the lumbar spine. (Tr. 211.) She had reduced forward elevation of the shoulders[6] but otherwise normal range of motion in all extremities. *Id.* There was evidence of muscle weakness, with her ability to grasp at 3-4/5. (Tr. 212.) There was no atrophy, and no sensory abnormalities. *Id.* Gait and coordination were normal. *Id.* She had the ability to hold a pen and write, touch fingertips to palms, grip (estimated 75% of normal), oppose thumb to fingers, pick up a coin, stand and walk without assistive device, walk on heels and toes and squat and arise from a squatting position. *Id.* Her circulation was normal. (Tr. 213.) There was no evidence of serious mood disorder or psychosis and she was oriented to time, person and place. *Id.* He estimated a mild to moderate limitation of her ability to lift, carry and sit; and he did not indicate any limitation on her ability to walk, stand, handle, finger, see, hear or speak. (Tr. 214.) The limitations that Dr. Dobbs found were "based on her history largely." *Id.*

In view of this medical record, the Court concludes that the ALJ did not disregard or misconstrue the opinion of Dr. Schlesinger.

Next, Plaintiff contends that the ALJ's credibility determination was flawed. In his decision (Tr. 16), the ALJ considered Plaintiff's subjective complaints in light of the factors identified by the Court in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984):

> The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints. The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:
>
> 1. the claimant's daily activities;

---

[6]She had 120° range of motion compared to a normal range of motion of 150°.

6

>    2. the duration, frequency and intensity of the pain;
>
>    3. precipitating and aggravating factors;
>
>    4. dosage, effectiveness and side effects of medication;
>
>    5. functional restrictions.
>
> The adjudicator is not free to accept or reject the claimant's subjective complaints *solely* on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole.

*Polaski v. Heckler*, 739 F.2d at 1322 (emphasis in original).

After carefully reviewing the record, the Court concludes that it contains little objective support for Plaintiff's claim of disability. No medical evaluations showed conditions that were disabling. Furthermore, inconsistencies between the medical evidence and Plaintiff's subjective complaints of pain supported the ALJ's decision to discount those complaints. *Richmond v. Shalala*, 23 F.3d 1141, 1443 (8th Cir. 1994).

Given the lack of medical evidence in support of Plaintiff's allegations, her daily activities, her poor work record, her functional capabilities, and the lack of greater restriction placed on Plaintiff by her physicians, the ALJ could rightly discount Plaintiff's subjective complaints. *See, e.g., Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (ALJ may discount subjective complaints if there are inconsistencies in the record as a whole); *Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) (ALJ may discount complaints inconsistent with the evidence as a whole); *Dodson v. Chater*, 101 F.3d 533, 534 (8th Cir. 1996) (after full consideration of all evidence relating to subjective complaints, ALJ may discount complaints if there are inconsistencies in evidence as a whole).

Plaintiff argues that, because the ALJ found, at Step 3, that she had pain, he was precluded from later finding that her complaints of pain lacked credibility. (Plf's App. Br. at 7.) In finding her less than fully credible, the ALJ did *not* conclude that Plaintiff had no pain. Instead, he found that the pain was not disabling. Pain is considered disabling when it is not remediable and precludes a claimant from engaging in any form of substantial gainful activity. *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994), *quoting Cruse v. Bowen*, 867 F.2d 1183, 1186 (8th Cir. 1989). It is a

7

recognition that a claimant can work, despite pain, unless that pain is disabling. As the Eighth Circuit has noted, "millions of people do every day." *Wheeler v. Sullivan*, 888 F.2d 1233, 1238 (8th Cir. 1989).

Plaintiff also contends that the ALJ's failure to discuss her medications was a fatal error. (App. Br. at 8.) The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Pelkey v. Barnhart*, 433 F.3d 575, 578 (8th Cir. 2006); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004).

In the same vein, Plaintiff argues that, because she testified that she did not have any health insurance and had limited means to pay for medical treatment, the ALJ erred in citing her lack of medical treatment as a factor which adversely affected her credibility. (Plf's App. Br. at 8.) Lack of financial resources may, in some cases, justify a claimant's failure to seek medical attention or follow prescribed treatment. *Johnson v. Bowen*, 866 F.2d 274, 275 (8th Cir. 1989). However, it does not appear that Plaintiff was unable to obtain medical care due to her lack of financial resources. (Tr. 127-215, 226, 230-38) There is no evidence that she told her physicians that she was unable to afford prescribed treatment. *Johnson,* 866 F.2d at 275. Similarly, there is no evidence that she attempted to find any low cost or no cost medical treatment for her alleged pain and other medical problems. *See Murphy v. Sullivan*, 953 F.2d 383, 386-87 (8th Cir. 1992)(no evidence claimant sought low cost medical treatment from her doctor or from clinics and hospitals or that she was denied medical care because of her financial condition). It is for the ALJ to determine, in the first instance, a claimant's motivation for failing to follow prescribed treatment or seek medical attention. *Johnson,* 866 F.2d at 275. Thus, the Court concludes that this argument is without merit.

The ALJ utilized the proper analytical framework in evaluating Plaintiff's credibility. He made express credibility findings and gave his reasons for discrediting Plaintiff's subjective complaints. *E.g.*, *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996); *Reynolds v. Chater*, 82 F.3d 254, 258 (8th Cir. 1996); *Hall v. Chater*, 62 F.3d 220, 224 (8th Cir. 1995). His credibility findings are entitled to deference as long as they are supported by good reasons and substantial evidence. *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003).

Finally, Plaintiff contends that the ALJ failed to consider her headaches, which were well documented in the medical record. (Plf's App. Br. 7-8.) The ALJ noted Plaintiff's testimony that she had headaches and migraines about six times a month. (Tr. 17.) However, contrary to Plaintiff's suggestion, the record does *not* support her complaints of, or treatment for, headaches or migraines. Plaintiff does not cite to the record in support of her contention. Such a failure to cite to the record in support of an argument is a waiver of the argument:

> [W]e see no reason to abandon the settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. As we recently said in a closely analogous context: "Judges are not expected to be mind[]readers. Consequently, a litigant has an obligation 'to spell out its arguments squarely and distinctly,' or else forever hold its peace."

*United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), *cert. denied*, 494 U.S. 1082 (1992)(citations omitted); *accord*, *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting out of hand conclusory assertion that ALJ failed to consider whether claimant met Listings because claimant provided no analysis of relevant law or facts regarding Listings); *Perez v. Barnhart*, 415 F.3d 457, 462 n.4 (5th Cir. 2005) (argument waived by inadequate briefing); *Murrell v. Shalala*, 43 F.3d 1388, 1389 n.2 (10th Cir. 1994) (perfunctory complaint fails to frame and develop issue sufficiently to invoke appellate review); *Hartmann v. Prudential Ins. Co. of America*, 9 F.3d 1207, 1212 (7th Cir. 1993) (failure to press a point, even if mentioned, and to support it with proper argument and authority forfeits it) (Posner, C.J.); *SEC v. Thomas*, 965 F.2d 825, 827 (10th Cir. 1992) (it is obligatory that appellant claiming error as to factual determination provide court with essential references to record to carry burden of proving error); *Leer v. Murphy*, 844 F.2d 628, 635 (9th Cir. 1988) (issues raised in brief which are not supported by argument are deemed abandoned).

The Court has searched the record and found only one complaint of headache. On October 11, 2007, Plaintiff complained of a sore throat, headache, sinus problems and neck pain. (Tr. 237.) On her next visit, December 6, 2007, she had no complaint of headache. (Tr. 236.) She did not claim that she was limited in her ability to work by headaches. (Tr. 82.) To the contrary, she stated

that the only thing that was wrong with her were the problems with pain in her shoulders, and a limitation in lifting. (Tr. 80.)  Under these circumstances, such a lone complaint in the medical record of a headache does not merit further discussion.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings.  The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ.  *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996), *superceded by statute on other grounds*; *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).  The Court has reviewed the entire record, including the briefs, the ALJ's decision, and the transcript of the hearing.  The Court concludes that the record as a whole contains ample evidence that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also, Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004).  The Court further concludes that the ALJ's decision is not based on legal error.

IT IS THEREFORE RECOMMENDED that the final decision of the Commissioner be affirmed and Plaintiff's Complaint be dismissed, with prejudice.

DATED this 24th day of November, 2009.

_____
UNITED STATES MAGISTRATE JUDGE